FIDELITY & CASUALTY INS. CO. OF NEW YORK v. MOUNTCASTLE. (No. 8746.)

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 15, 1917. Petition for Rehearing Withdrawn Jan. 12, 1918.)

1. INSURANCE ☞665(5) — ACCIDENT INSURANCE—EVIDENCE—DISABILITY.

In a suit upon an accident policy to recover for total disability, evidence *held* to sustain a finding that insured suffered an injury while traveling on a train, resulting directly and exclusively in immediate, continuous, and total disability, rendering him incapable of performing duties pertaining to his occupation as a grain man.

2. INSURANCE ☞539(5) — ACCIDENT INSURANCE—NOTICE OF CLAIM—STATUTE.

Rev. St. 1895, art. 3379, providing that no stipulation in any contract requiring notice of claim for damages as a condition precedent to the right to sue thereon shall be valid, unless it is reasonable, and that any stipulation requiring notice within less than 90 days shall be void, and that notice, if required, may be given to the nearest or other convenient local agent, does not mean that notice given after 90 days may not be permissible when the circumstances disclose that the delay was not unreasonable, and where the evidence did not show that the company was injured by reason of the delay; the purpose of notice being to convey knowledge to guard against fraud, and to investigate the claim, and to prepare to contest it.

3. INSURANCE ☞668(14)—ACCIDENT INSURANCE — NOTICE OF CLAIM — QUESTION FOR JURY.

In an action upon an accident policy for total disability, *held*, on the evidence, that the refusal to give a peremptory instruction for defendant on the ground of insured's failure to give written notice of accident within the time prescribed by the policy was proper.

4. INSURANCE ☞579 — ACCIDENT INSURANCE—RECEIPT—SETTLEMENT.

Receipt by insured of $14 in payment of claim for total disability under an accident insurance policy, including doctor's bills, etc., the amount paid being only the amount of the doctor's bills, did not constitute a settlement in full for injuries sustained.

5. RELEASE ☞13(2)—VALIDITY—CONSIDERATION.

A debtor's payment of a liquidated amount presently due and to which he has no defense that can be urged in good faith or with color of right is not itself a sufficient consideration to sustain the creditor's release of other liquidated claims.

6. INSURANCE ☞665(5) — ACCIDENT INSURANCE—ACTION ON POLICY—FINDING AS TO DISABILITY—EVIDENCE.

In an action upon a policy of accident insurance to recover for a total disability, evidence *held* to sustain a finding that insured's injury resulted directly and independently in immediate, continuous, and total disability, preventing him from performing any work pertaining to his occupation, from the date of the accident, September 15, 1913, to February 9, 1916, notwithstanding he had for 15 months after the accident received his usual salary from his employer.

7. INSURANCE ☞662(1) — ACCIDENT INSURANCE—NOTICE—EVIDENCE.

Testimony of insured claiming total disability under an accident policy that he gave the insurer's local agent verbal notice of the accident was admissible, though not a compliance with the policy, as bearing on the question whether his subsequent written notice was given within a reasonable time.

8. INSURANCE ☞661 — ACCIDENT INSURANCE—ACTION ON CLAIM—EVIDENCE.

In an action upon an accident insurance policy for total disability resulting from an injury on a passenger train, evidence as to the amount for which insured had settled his judgment against the railroad on account of injury, *held* too weak and remote to be admissible.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by G. C. Mountcastle against the Fidelity & Casualty Insurance Company of New York. Judgment for plaintiff, and defendant appeals. Affirmed.

Marshall Thomas, of Dallas, for appellant. McLean, Scott & McLean and Marshall Spoonts, all of Ft. Worth, for appellee.

BUCK, J. This is a suit by appellee against appellant to recover for total disability under an accident policy dated April 5, 1911, and renewed for one year on April 5, 1913, said claimed total disability beginning on the date of an accident alleged to have occurred September 15, 1913, at Mercedes, Tex., while plaintiff was traveling on a passenger train. It was alleged that the total disability had been continuous from the date of said accident, and would so continue during the remainder of plaintiff's life. It was further alleged that the policy issued by defendant company provided that if the insured was injured while traveling on a public conveyance provided by a common carrier for passenger service, that the compensation recoverable for total disability should be $100 per week. Plaintiff also sought to recover the statutory 12 per cent. damages, and attorney's fees.

In addition to the general issue, the defendant specially pleaded that under article 16 of said policy it was provided that written

notice of an accident for which a claim was made should be given to the company at its home office in New York City as soon as might be reasonably possible, together with full particulars, etc.; that under article 19 of said policy, it was provided that a failure to comply with any of the provisions of the policy should render invalid any claim thereunder; that by virtue of an indorsement attached to and made a part of said policy, it was provided that the same was issued subject to article 3378 and article 3379 of the Revised Statutes of Texas of 1895, both of which articles were quoted in said indorsement; that by reason of said provisions of the policy, and the provisions of said articles of the Revised Statutes of Texas, the plaintiff was required to give written notice to the appellant of the accident within 91 days from the date thereof; and that said provisions of said policy were reasonable. It was alleged that the plaintiff failed to give said notice within the required time, and that said failure on his part rendered invalid the claim asserted by him in this cause. It was further specially denied that the accident in question resulted in immediate and continuous total disability, but that by reason of said accident he was compelled to employ physicians to treat him, and that in accordance with article 10 of said policy he was entitled to be reimbursed for said medical expenses incurred by him, and that in accordance with the representations and request of plaintiff, defendant paid to him the sum of $14 in settlement of said expenses claimed by him and of all right of action that he might have by reason of said accident or injury.

Plaintiff by supplemental petition denied the defensive allegations contained in defendant's answer, and he alleged that the $14 paid him, the receipt for which he signed, was in payment of the doctor's bills only, and that there was no consideration moving to him to support defendant's claim of a payment in full for the injury he had sustained. The cause was tried before a jury on special issues which were answered favorably to plaintiff, and defendant has appealed from a judgment entered in accordance with the verdict of the jury. The judgment is in the sum of $15,400, with interest on $12,500 of the same from February 9, 1916, and on $2,900 thereof from the date of the judgment; the latter amount being 12 per cent. damages and attorney's fees.

The evidence shows that at the time of the accident plaintiff was the local manager of the J. Rosenbaum Grain Company, and that until January 1, 1915, he continued in said position and received a salary of $5,000 per annum. It is further shown that soon after plaintiff returned to his home at Ft. Worth, subsequent to the accident, he met J. S. Coe, the local agent of the defendant company, and had a conversation with him in which he gave him a complete verbal report of the accident, and Coe told him that he was going to Dallas, and would make a report of it to the general agents there. About 4 or 5 weeks thereafter, plaintiff again met Mr. Coe, who told him that he had reported the accident to the company. At the time of the accident, plaintiff was nearing the age limit at which the defendant company issued the character of policy carried by plaintiff. Some time during the latter part of 1913, and subsequent to the accident, plaintiff had a conversation with said Coe concerning the making of a claim by plaintiff against defendant company on account of the accident and injury, for any disability sustained, and Mr. Coe advised him not to make any claim on that account. He told him that it was hard enough to get a renewal after a man reached the age of 65—plaintiff was then in his sixty-fourth year—and Coe advised him that if he made a claim he (Coe) did not believe the company would renew his policy. Thereupon plaintiff concluded that he would not make a claim under said policy, and told Coe of such conclusion. In April, 1914, plaintiff's policy was again renewed for the succeeding 12 months, and thereafter defendant's local agent, Coe, told plaintiff that if he would furnish the company with the receipted doctor's bills that had been paid by him he could secure from the company a reimbursement of such expenses incurred. Said receipted doctor's bills, which bills amounted to $14 were furnished Coe, and thereafter he delivered to plaintiff the following receipt:

"Received from the Fidelity & Casualty Company of New York the amount of the draft to which this receipt is attached. In payment of the claim, including doctor bills, for injuries received on or about September 15, 1913."

This receipt was signed by plaintiff June 10, 1914, and plaintiff cashed the draft for $14 accompanying it.

Appellant's first assignment of error complains of the failure of the trial court to give its requested peremptory instruction for the following reasons:

"A. The undisputed evidence shows that the injury sustained by plaintiff did not result directly, independently, and exclusively of all other causes in immediate, continuous, and total disability that prevented the assured from performing any and every kind of duty pertaining to his occupation from the date of said accident until the 9th day of February, 1916.

"B. The undisputed evidence shows that plaintiff did not give to the defendant written notice of the accident within the time prescribed by the policy, and that the time prescribed by the policy within which said notice should be given was a reasonable time, and that the defendant had not waived such failure; under the terms of the policy such failure renders the claim of plaintiff thereunder invalid.

"C. The undisputed evidence shows a valid existing release executed by plaintiff which was a valid defense to the claim embraced in this suit, and the evidence of the plaintiff shows that there was a valid and legal consideration for such release.

"D. There is no evidence showing that the local agent, J. S. Coe, had any authority to

waive the provision of the policy, requiring notice of the accident, and if the evidence is sufficient to raise the issue of such waiver on the part of Coe, the same would not be binding upon the defendant."

[1] We are of the opinion that the evidence is ample to sustain the finding of the jury that the appellee suffered injuries as claimed, and they resulted directly, independently, and exclusively of all other causes in immediate, continuous, and total disability that prevented the assured from performing any and every kind of duty pertaining to his occupation from the date of said accident until the 9th day of February, 1916. It is true the evidence shows that during the time between the accident and February 9, 1916, the appellee was frequently at his office and place of business, but the testimony further shows that he was in no condition, physically or mentally, to perform the duties and to transact the business pertaining to the position which he occupied. Plaintiff's own testimony shows that he was injured while on a business trip in the southwestern portion of the state, but that by reason of said injuries he was unable to attend to the business for which he had taken the journey, and returned immediately thereafter to Ft. Worth, and sent for a physician to attend him. He testified:

"After I went home on that occasion, I think I remained there during the balance of the month of September, and after that time, I would come to town for about an hour a day; I do not remember the exact number of days that I was confined to my bed on that occasion, but I think it was perhaps 10 or 12 days, and Dr. Lyle Talbot treated me while I was confined to my bed."

He then testified that he went to the hospital and underwent a serious operation, rendered necessary by reason of the injuries sustained, and that after he was able to leave the hospital he went to Colorado Springs, and stayed some thirty days. He testified:

"After I was hurt on September 15, 1913, I suffered continually until the 25th day of September, 1914," when the operation was performed.

He further testified that during his stay in Colorado Springs, in July and August, 1914, he was confined to his bed, and suffered continuously; that upon his return home he went to bed and stayed about 4 weeks; that he then attempted to come to the office and tried to do some work, but was unable to do so because of his suffering; that all he was able to do while in his office was to sit in a chair and place himself in as comfortable a position as possible in order to lessen the severe pain with which he suffered. He further testified:

"I held my position which paid me $5,000 a year for about 15 months after I received my injury, but from the time I got hurt until I lost my position with the Rosenbaum Grain Company I did nothing for that company, because I could not do it on account of my suffering. * * * Since I received this injury, I have not done anything because my suffering has been too great, and I have not been able to do it. I can't concentrate my mind on my business, though I have tried to do so. After I lost my position with the Rosenbaum Grain Company, Mr. R. I. Merrill and myself organized the Mountcastle-Merrill Grain Company, but I have done no work in connection with that company, except to go to the office for about an hour each day and put my feet up on my desk, and occasionally go into the Exchange room and look at the markets. Prior to my injury, my business was that of a grain man. Mr. R. I. Merrill, with whom I am in business, is my son-in-law. Prior to the time I got hurt on the occasion in question, my health was perfect. I was a very robust and hearty man. I did not know my strength, but since I received this injury, my health has been wretched. My wretched condition of health has not come from anything except this injury that I received. * * * At the time I received this injury I was in my sixty-fourth year, and back for 12 or 15 or 20 years prior to that time my health had been as near perfect as any man's health could be. I never had any injuries prior to this occasion. My condition up to February, 1916, was such that I could not sit down and attend to any business pertaining to my occupation as a grain man. I could not do it on account of my suffering. At the time I got hurt, my weight was 225 pounds. I now weigh 198 pounds."

In this connection R. I. Merrill, plaintiff's son-in-law, testified as follows:

"Previous to September, 1913, and up to the time of this injury, Mr. Mountcastle, in the way of business ability and mental activity and, physically, I believe, was regarded as one of the foremost grain men in this country. * * * Physically he was a powerful man. He was in generally good health during the 11 years I was associated with him before he got hurt. Since his injury I have been with him constantly, except when he has been away from Ft. Worth. I was with him after he was injured until he lost his position with the Rosenbaum Grain Company—in the same office with him. * * * I will say that Mr. Mountcastle was in pretty bad shape. He was low-spirited, and took very little interest in the business, except what you would tell him. He initiated nothing. He had no resource. If anything came up that looked like it would go wrong, he did not know what to suggest to remedy the situation. He would come down to the office—he usually gets down pretty early, about 8 o'clock—and would look over the mail and put it over on my desk for distribution and attention, and he would leave, possibly, in an hour or two, sometimes less, and he might stay a little longer, and come down in the afternoon for a short period. A great many times, though, and for weeks at a time, he was not able to come at all, just up and down, and said he was about dead—if anybody would ask him how he felt, 'Oh, he was about dead,' and he dragged himself around like he was about dead. After his injury I think I am safe in saying he did not do any buying or selling. He may have answered some personal letters with the Chicago office about some particular piece of business, but so far as actually conducting the business or originating new business, why that practically all fell on me. Buying and selling is the grain business. The reason he has not bought or sold any since his injury is that he has not been in touch with the grain business. He has not seemed to get his mind on it. His mind has been principally on himself and his injuries and his feelings; irritable, and just could not concentrate on what —I would tell him what the prices were now, and he did not seem to recall them; could not apply them to the ever-changing condition of the grain business. He made complaint as to where he was suffering, and how he was suffering—there was no question about that; he was complaining all the time; he suffered all

the time. * * * Since his injury, or rather I mean since his trip to Chicago, and his coming back to Ft. Worth, his ability to attend to any of the duties of that office or of a grain man are almost nil, if that word would express it—nothing—he does not contribute anything to the active business of the office; in other words he does not make any money for the office, and in one or two transactions that he tried to engineer he lost a good deal of money. * * * I have noticed Mr. Mountcastle around the home where we are, around our residence. Mr. Mountcastle spent a great deal of time at home and largely at his room; sometimes in bed and sometimes around the house. He goes home early in the afternoon and in the morning, and to use a common expression, kind of putters around and interferes with domestic affairs."

Much evidence of this kind is in the record, but we think sufficient has been quoted to support the conclusion reached by the jury and the trial court that by reason of the injuries sustained, plaintiff was rendered incapable of performing the duties of the business in which he was engaged, or of any other business within the meaning of the policy, and that such incapacity, mental and physical, arose immediately after the injury, and was continuous up to the date heretofore mentioned. The fact that he visited his place of business considerably during said period, and the fact that his employer continued to pay his salary during said time, would not exclude the theory that he was totally unfit to perform the duties incident to the position he held. His son-in-law, who was assistant manager under him, and assumed the burden of carrying on the business when it became evident that his father-in-law could not do so, would naturally be inclined to shield the plaintiff and to relieve him of the worry and work incident to the carrying on of the business. Mr. Merrill's competency to conduct the business without any material aid from the plaintiff may be inferred from the fact that the Rosenbaum Grain Company permitted the plaintiff to remain in nominal charge of its business in Ft. Worth for some 15 months after the accident, and that plaintiff was not discharged from said position until a visit by him to headquarters disclosed his mental and physical infirmity. Hence we are unable to sustain the first assignment in so far as it is based upon the reasoning given under paragraph A.

[2, 3] Nor do we feel that we are justified in holding that the trial court should have given a peremptory instruction for the reason given in paragraph B under this assignment. Article 3379 of Revised Statutes 1895, provides, in part, that:

"No stipulation in any contract requiring notice to be given of any claim for damages as a condition precedent to the right to sue thereon shall ever be valid unless such stipulation is reasonable, and any such stipulation fixing the time within which such notice shall be given at a less period than ninety days shall be void; and when any such notice is required, the same may be given to the nearest or any other convenient local agent of the company requiring the same."

It is evident from a reading of this statute that while the Legislature intended to provide that no stipulation in a contract requiring notice to be given within a less time than 90 days should be void, yet that it did not intend to provide that a longer time than 90 days might not be permissible when the circumstances disclosed that the delay was not unreasonable, and where the evidence failed to show that the other contracting party was injured by reason of the delay. As before shown, within a few weeks after the injury plaintiff informed the local agent of the appellant company of the accident, and gave him a complete verbal report thereof, and said agent stated to plaintiff that he was going to Dallas, where the general agents were located, and would make a report of it to them. Later he told plaintiff that he had made such report, and so far as this record discloses, such report was made by the local agent. While the written proof of loss was not filed with the appellant until December 5, 1914, yet written notice of the accident seems to have been given January 27, 1914. And appellant's officers knew of the injury, as evidenced by the fact that the company paid as early as June 10th of that year for the medical treatment incurred. The purpose of notice, as used in the statute, is to convey knowledge, or to bring home to the one affected thereby facts or information that will enable him to guard against fraud, to investigate the facts upon which the claim is based, or to prepare himself to satisfy, meet, or contest said claim. And there is nothing in this record tending to show that by reason of the delay in giving the written notice provided for in the policy that the appellant company was placed in a disadvantageous position, or that it has lost any rights that it would have had had the notice been given within the 90 days. A former suit was filed by appellee against appellant to recover for injuries received and disability resulting therefrom up to December 10, 1914, but a nonsuit was taken as to this suit, and proof of loss, claiming total disability from the date of accident to the filing of the proof, to wit, February 9, 1916, was then given appellant company. The character of the injury and the evident inability of the plaintiff himself, and of his doctors to determine the nature or scope of its effects, and the uncertainty as to whether the final result would be one of permanent and total disability, probably explains the delay in filing proof of loss, and in giving notice further than that given to the agent, before mentioned, and we do not feel that under the circumstances we can say as a matter of law that the delay was an unreasonable one. Hence we overrule the second ground advanced under appellant's first assignment.

[4, 5] We do not think that the fact that the receipt given by plaintiff to the defend-

ant company upon the payment of the doctor's bills was worded as shown would constitute such payment a settlement in full for injuries sustained. At all events, it was sufficiently ambiguous on the question of its scope to admit proof thereon.

Because defendant's agent advised against a claim for damages, the only claim made was for the amount incurred for medical services. For this item of damages the defendant company was liable, independent of the question of liability as to injuries. Article 10 of the policy provides for the payment by the appellant company for medical or surgical treatment incurred by the insured by reason of an accident falling within the terms of the policy when the amount of such medical or surgical fees is not in excess of $25. It is reasonable to presume that both the local agent and the insured understood that in presenting this claim for $14, plaintiff did not mean that such claim should cover anything else than the medical or surgical fees. The payment by a debtor of a liquidated amount, presently due, and to which he has no defense that can be urged in good faith or with color of right, is not by itself a sufficient consideration to sustain a release by the creditor of other liquidated claims against the debtor. Woodall v. Pacific Mut. Life Ins. Co., 79 S. W. 1090; Franklin Ins. Co. v. Willeneuve, 25 Tex. Civ. App. 356, 60 S. W. 1014; Insurance Co. v. Wickham, 141 U. S. 564, 12 Sup. Ct. 84, 35 L. Ed. 860. Therefore, in order to sustain the judgment as to this feature, and to overrule appellant's first assignment in so far as it rests upon the reason given in paragraph C thereunder, we are not required to pass upon the question as to whether plaintiff could excuse himself, under the circumstances shown, and in the absence of fraud pleaded and proven, from not reading the receipt he signed. If there was no consideration for the receipt given in so far as it attempted to cover items other than the doctor's bills, such receipt becomes nudum pactum. And it becomes immaterial whether the local agent had authority to waive the provisions of the policy requiring notice of the accident to be given to the defendant company at its home office. The question involved, we think, is not one of waiver, as contended in paragraph D, under this assignment, but whether under all the circumstances shown, written notice was given within a reasonable time. We do not understand the terms of the policy to require that written notice shall be given and signed by the injured party himself. If it be admitted, for the sake of argument, that in so far as the undertaking on the part of the local agent to give the notice required, said agent was acting as the agent of the plaintiff and not the defendant, yet the circumstances, we think, were admissible upon the question of the reasonableness vel non of the

time in which the notice was in fact given. Therefore we overrule appellant's first assignment as a whole.

[6] In the second, third, and four assignments the appellant attacks the finding of the jury in answer to issue No. 12, which issue submitted the question as to whether the injury sustained by plaintiff resulted directly, independently, and exclusively of all other causes in immediate, continuous, and total disability that prevented the assured from performing any and every kind of duty pertaining to his occupation from the date of the accident until the 9th day of February, 1916. To this question the jury answered, "Yes." The main insistence of appellant is that the evidence showed that during the said period of 15 months plaintiff below received a salary from his employers in the sum of $5,000 per annum, and that during said time, or at least during a good portion of it, he was at his office and place of business almost daily, and that the testimony of the defendant's witnesses J. S. Coe and E. B. Wooten was to the effect that apparently plaintiff's condition, physically and mentally, was not materially different during said period from what it was before the accident. But we think the testimony of plaintiff himself and of his son-in-law, R. I. Merrill, upon this point is sufficient to sustain the finding of the jury. Defendant's witnesses, who testified as to plaintiff's condition during said time, were certainly not in as favorable a situation to determine plaintiff's real condition and mental and physical capacity to transact business as was the witness Merrill, who was with plaintiff almost daily, both in the office and in the home. It certainly cannot be said that one who sees a person only occasionally, or under casual circumstances, is as competent to testify as to the real condition of health of such person as one who is closely associated with him, and because of business relations with and earnest concern for such person, is specially interested in the welfare and state of health of such person. Nor do we think that the fact that the plaintiff was paid during said period his accustomed salary would be conclusive proof that he was in condition of mind and body to earn it and capacitated to fulfill the duties of such employment. As already indicated, on account of Mr. Merrill's assuming in the main the management of the business during said time, and relieving his father-in-law of the worry and responsibility incident thereto, the real condition of plaintiff may not have been disclosed to his employer, whose principal office was in a distant state. The evidence further shows that the plaintiff had been in the employment of the same company for many years prior to his injury, and during said time had been an efficient and capable manager of its business. Under such circumstances it is not uncommon for an employer to continue the salary of a trusted employé,

who has given the best of his life to its interests and service, for months and years after the failing health of such employé renders him incompetent to perform the duties pertaining to his position. Such practice is but a recognition of and reward for past services. The cases cited by appellant, to wit, Bylow v. Casualty Co., 72 Vt. 325, 47 Atl. 1066, Association v. Millard, 43 Ill. App. 148, James v. Casualty Co., 113 Mo. App. 622, 88 S. W. 125, etc., to sustain the contention that where the facts show that the insured was able, during the period for which he claims indemnity on account of total disability, to perform some service for which he received remuneration, although not able to perform the exact duties with reference thereto theretofore performed, that he cannot recover for total disability, are not in conflict, we think, with our conclusions hereinabove expressed. As said in Association v. Millard, supra:

"The undertaking of defendant was not to indemnify against pain or inconvenience, but for a loss of time when wholly disabled from attending to his professional business."

And in James v. Casualty Co., supra, it is said:

"We therefore hold the contract to mean, not that the insured was rendered absolutely and literally unable to perform any part of his occupation, but that he was disabled from performing substantially the occupation stated in the policy."

In Wall v. Casualty Co., 111 Mo. App. 504, 86 S. W. 491, also cited by appellant in this connection, it is said:

"The purpose was to provide indemnity for the plaintiff if he should sustain loss of time in consequence of an accidental injury; that is, be prevented by such an injury from using his time so as to derive income from it. In other words, the agreement contemplated an indemnity to the plaintiff by an accidental injury [by which] his ability to earn money should be suspended."

Taking this quotation as a whole, it is evident that the court who rendered the opinion did not mean to hold that because the facts show that the insured under a policy like this did receive money in the form of a salary that it would be conclusive against his contention of total disability, irrespective of facts that showed that during said period he was totally disabled to perform the services incident to his employment. It is not a question of the amount of money the plaintiff received during the time for which he claims total disability existed, but rather the issue as to whether or not during said period he was in fact, by reason of said injury, totally disabled to perform any substantial service or duty connected with his line of business or employment. Hence we overrule these three assignments, and also the fifth, sixth, and seventh, which are directed to the finding of the jury in answer to issue No. 10, which submitted to the jury the question of whether or not a written notice dated January 27, 1914, was given to the defendant as soon as was reasonably possible, and to which query the jury answered, "Yes." These assignments are overruled for the reasons heretofore given, and also the eighth and ninth, which attack the judgment on the ground that the undisputed evidence shows that plaintiff had released a claim against the defendant prior to the suit, as shown by the receipt introduced signed by the plaintiff to which reference has heretofore been made. We do not find it necessary to say anything further with reference to the matter here advanced, and the assignments are, accordingly, overruled.

In the tenth assignment complaint is made of allowing plaintiff double indemnity for the period of time which the jury found he was totally disabled, because, as urged by appellant, there was no finding of the jury that said bodily injury sustained by plaintiff had occurred "while on a public conveyance (including the platforms, steps, or running board thereof) provided by a common carrier for passenger service," as in said policy provided. In answer to question 8, to wit, "Was the plaintiff a passenger on a railway train at the time he received his injuries, if he did receive any?" the jury answered, "Yes." Therefore the tenth assignment and the eleventh, which involves the same question, are overruled.

[7] We think the objection to the testimony of plaintiff that he gave J. S. Coe, the local agent, verbal notice of the accident was admissible, not because said verbal notice could be held a compliance with the requirements of the policy for a written notice, but as touching on the question of whether or not the written notice subsequently given was within a reasonable time. Therefore we overrule the twelfth assignment, and also the thirteenth, fourteenth, and fifteenth, which involve in principle the same question.

[8] In the sixteenth specification of error it is urged that the trial court erred in refusing to allow the defendant to prove by the plaintiff the amount for which he settled the judgment he recovered against the railroad company on account of injuries involved in this accident. It is contended that this testimony was admissible for the purpose of showing the estimate that the plaintiff himself placed on the character and extent of his injuries. That if the plaintiff had been permitted to answer defendant's questions as to this matter, defendant would have been able to show that plaintiff settled for $10,000 a judgment which he had recovered against the railroad company in the sum of $15,000. We think the probative effect of the testimony sought to be elicited is too weak and remote to have authorized the submission.

All assignments are overruled, and the judgment is affirmed.

CONNER, C. J., not sitting, serving on writ of error committee at Austin.