WESTERN UNION TELEGRAPH COMPANY v. M. A. DAVIS.

Decided November 14, 1900.

**1. Telegram—Free Delivery Limits—Negligence—Evidence.**

Where action for delay in delivering a telegram was defended on the ground that the addressee resided beyond free delivery limits of the receiving office and no delivery charge was paid, there was no error in permitting the sender to testify that no inquiry was made by the operator as to where addressee lived.

**2. Mental Suffering—Exclamations—Res Gestae.**

In an action by a mother for suffering from failure to reach her son before his death by reason of delay in delivery of a telegram, her exclamation in the presence of his body, "O that I could have seen him before he died," could be proven as part of the res gestae.

**3. Negligence—Death Message—Statements of Operator.**

Statements of an operator to one who came to send a second message, not hearing from the first, that it was unnecessary to do so, that it was an important death message and would be delivered, were admissible as showing knowledge by the company of the importance of the message.

**4. Telegraph Company—Negligence—Evidence.**

Evidence of persons who went by rail to bring news to plaintiff of the death of her son, that they found her place of residence, by inquiry, in twenty or thirty minutes after reaching the town, was admissible where nondelivery of a telegram previously sent was sought to be excused on the ground of inability to find the addressee.

**5. Telegraph—Free Delivery Limits.**

A telegraph company was not excused for nondelivery of a message to one living beyond the free delivery limits, though no extra charge for delivery was paid, where none was demanded and the company usually delivered messages beyond such limits.

**6. Same—Negligence—Question of Fact.**

Whether or not a telegraph company was negligent in failing to notify the sender of its inability to find the address of the party to whom a message was directed, was a question of fact for the jury.

ERROR to the District Court of Hamilton County. Tried below before Hon. C. W. COTTON.

*Ramsey, Brown & Odell*, for plaintiff in error.

*Dewey Langford*, for defendant in error.

COLLARD, ASSOCIATE JUSTICE.—This is a suit by defendant in error, Mrs. M. A. Davis, against plaintiff in error for damages for negligence of defendant in failing to deliver to her a telegram sent from Hico to Stephenville, giving information that her son had been mortally wounded, by which failure she was deprived of the right to be present with her son before his death.

The company specially answered that Mrs. Davis lived beyond the free delivery limit in Stephenville, and set up special agreement exempting it from liability in such case.

The trial resulted in a judgment for plaintiff for $500, from which error is sued out by defendant.

The telegram was sent from Hico as alleged, and the usual fee paid at the time by J. P. Rodgers at instance of Willie Davis, brother of Jimmie Davis, who had been accidentally shot. The telegram read as follows: "To Mrs. M. A. Davis, Stephenville, Texas: Jimmie mortally wounded accidentally. Come quick." It was signed "Willie Davis." It was sent at about half-past 4 o'clock, October 29, 1898. Rodgers paid for the telegram to a Mr. Herring, acting operator. The message was sent and reached Stephenville in time to have been delivered where Mrs. Davis was, if proper diligence had been used, so that she would have been with her son before he died; but because of the inefficiency and want of diligence of the messenger boy, and want of proper attention by the defendant's agent at the receiving station, it was not delivered in time, and she arrived after her son had died, causing the distress alleged. When the message was delivered at the house next day, Mrs. Davis had gone to Hico by private conveyance. Mrs. Davis lived about 300 or 400 yards out of the free delivery limits in Stephenville, and about the same distance from the courthouse. The courthouse yard was the line of the free delivery limit. Mrs. Davis' residence was nearer the center of business in the town than the depot. The town was incorporated, and she lived within the corporate limits. Sammie Orr, about 15 years old in November, 1898, and who had lived in Stephenville all his life, was the messenger. He got possession of the message about 5:15 p. m. on the 29th of October, not quite sundown. He did not know where Mrs. Davis lived, but he could have known if he had made proper inquiry. The company paid him $8 per month for his services, and when there was an extra charge for delivery, he says "I got that," a fee of 10 cents for delivering outside free delivery limits. If the 10 cents were not paid, he would deliver the message anyway. The reason he did not deliver the message in question was not because Mrs. Davis lived beyond the free delivery limits, but because he did not find her. Strangers

could and did learn where Mrs. Davis lived in twenty or thirty minutes after arriving at Stephenville to inform Mrs. Davis of the facts. The 10 cents were not paid the messenger boy before or at the time he received the message.

*Opinion.*—1. It was not error to permit witness Rodgers, over objection of defendant, to testify that the agent of defendant in Hico made no inquiry at the time the telegram was sent as to where plaintiff Mrs. Davis lived in Stephenville. If she lived beyond the limit of free delivery, it was the custom to charge extra for delivery, and if the extra charge became material, the company should have inquired as to the fact, so that the sender could be advised of the fact, and pay the same, if demanded. The public would not be presumed to know the free delivery limit in a small town, where the addressee lives near the courthouse square.

2. It was not error to permit witnesses to testify over objection that plaintiff on her arrival, after her son's death and in presence of his dead body, exclaimed: "O that I could have seen him before he died." The exclamation was a part of the res gestae of injured feelings.

3. Joe Newsom was permitted to testify over objection of defendant that he went to the office of defendant on the night that the message was sent and spoke to the agent of defendant about sending another message, and that the agent informed him that it would be no good, and that the message sent was an important death message, and that it would be delivered, and that defendant's agents understood that they were liable for not delivering death messages, and that it was throwing money away to send another message. The remarks of the agent show that he knew and understood the message to be a death message, and was important as such. In fact it was such a message, and it was not error to allow proof that it was so understood at the sending office.

4. It was not erroneous to allow witnesses Fletcher and Carpenter to testify that they got to Stephenville, carrying to plaintiff the news of the death of her son, and though not acquainted with the town, in twenty or thirty minutes after arrival learned where Mrs. Davis was to be found. The testimony is evidently pertinent to the issue that Mrs. Davis was accessible and her residence could be known by proper inquiry in so short a time.

5. The court's charge as to liability of the company for nondelivery of a message beyond the free delivery limits was more favorable to defendant than it was entitled to, and it was not necessary to give the requested charge of defendant on that issue. If the company usually delivered messages beyond such limit in Stephenville without payment of the extra charge of 10 cents, and no demand was made for such extra charge, it could not be excused for nondelivery of the message in question because the extra 10 cents were not prepaid. It would have been error, therefore, to instruct the jury as requested, that the defendant was not in duty bound to go beyond the free delivery limits in the town.

6. The next question raised by assignment is upon the charge of the court submitting the question of negligence vel non on the part of the company in failing to notify the sender that the addressee could not be found; and the charge was in conformity with the former decision of this court in this case. 51 S. W. Rep., 258. We adhere to the decision heretofore made.

In conclusion, and in answer to the assignment that the court should have granted a new trial, we only wish to add that the evidence fully supports the verdict and that it is warranted by the law, and no satisfactory reason can be given for reversing the judgment. It is therefore affirmed.

*Affirmed.*