WESTERN UNION TELEGRAPH COMPANY v. E. L. WILSON.

No. 2519.   Decided April 25, 1917.

**1.—Telegraph—Free Delivery Limits.**

The telegraph company, fixing for its own purposes its free delivery limits at the destination of a message, has the burden of ascertaining, from the sender or otherwise, whether the addressee lives beyond those limits, and of demanding of the sender the extra compensation for delivery charged in' that event, in order to be relieved on such ground from its obligation to make prompt delivery.   Western U. Tel. Co. v. Harris, 105 Texas, 320, followed.   (Pp. 376, 377.)

**2.—Telegraph—Death Message—Charge—Damages.**

Plaintiff seeking damages for injured feelings from being prevented from attending his mother's funeral by negligence of a telegraph company in delivery of the message, and the charge confining his recovery to such damages, it was not error to refuse a requested instruction that plaintiff could not recover damages for grief occasioned by the death of his mother. It was' proper and the better practice, it seems, to give such charge in cases of this character; but the refusal was not ground for reversal.   (Pp. 377, 378.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

Wilson sued the telegraph company and recovered judgment, which was affirmed on defendant's appeal (152 S. W., 1169).   Appellant then obtained writ of error.

*N. L. Lindsley* (*George H. Fearons* of counsel), for plaintiff in error. —On effect of establishing free delivery limits.   Western U. Tel. Co. v. Redinger, 22 Texas Civ. App., 362, 54 S. W., 417; Western U. Tel. Co. v. McConnico, 27 Texas Civ. App., 610, 66 S. W., 592.

On refusal of charge excluding from consideration grief caused by death of mother.   SoRelle v. Western U. Tel. Co., 55 Texas, 313; Western U. Tel. Co. v. Smith, 30 S. W., 937.

*G. W. Hardy and Gibson & Callaway,* for defendant in error.—On free delivery limits.   Western U. Tel. Co. v. Ayres, 105 S. W., 1165; Western U. Tel. Co. v. Harris, 132 S. W., 876; Western U. Tel. Co. v. Shockley, 122 S. W., 945.

On refusal of requested instruction on damages.   Rule 62a for Courts of Civil Appeals, 149 S. W., X; Pecos & G. N. R. Co. v. Germany, 158 S. W., 1038.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The suit was for the failure of the telegraph company to make prompt delivery of two telegrams sent the plaintiff at Oil City, Louisiana, on April 19, 1911, announcing the death of his mother, whereby, it was claimed, he was prevented from attending her funeral.

Both telegrams were promptly received at the company's office in Oil City before 10 o'clock on the 19th, the same morning they were sent. They were not received by the plaintiff until the 21st, and then through

the postoffice at Oil City, where they were deposited by the company for mailing on the morning of that day. While there was evidence of some inquiry for the plaintiff made by the company in an effort to deliver the messages on the 19th, there was evidence, on the other hand, warranting a finding that by ordinary diligence on its part the delivery could have been made to him in Oil City during that day, which would have enabled him to reach the place of the funeral in time. This consisted of proof that he was in Oil City and about its business section during all of the forenoon of that day and until 1:30 in the afternoon; that it was a small place, having only about twenty-four business places, and that he was generally known there.

The plaintiff at the time actually lived in what had been the old village of Caddo, the location of which was distant about a half or three-quarters of a mile from Oil City. Both places were on the same railroad line, Caddo being the older place. Upon the discovery of oil in the vicinity of Caddo, Oil City grew up, and from the evidence it seems Caddo practically moved to it. When these messages were received Caddo consisted only of one store, a section house, and two or three other houses. Houses were scattered up and down the railroad between the two places. According to some of the evidence there was nothing separating the two places. Caddo had neither railway station nor postoffice. Persons living there made use of the station and postoffice at Oil City.

A special charge was requested by the telegraph company to the effect that inasmuch as the telegrams were sent upon the understanding that they were not to be delivered outside of the company's established free delivery limits in Oil City, it was not bound to make such delivery outside of those limits. The charge was refused. There was evidence that the company's free delivery limits in Oil City were confined to a radius of a half mile from its office. The house in the old village of Caddo, where the plaintiff lived, was distant more than a half mile from the company's office.

According to the proof, Oil City and Caddo were practically one place. They had substantially grown together, and Caddo could hardly be regarded as having any separate existence. The question presented, therefore, is simply whether the company was bound to make the delivery outside of its free delivery limits in Oil City.

When the messages were received for transmission at the company's sending office it made no demand for any extra charges to cover their delivery outside of its free delivery limits at the place where they were addressed. The question is accordingly plainly ruled by Western U. Tel. Co. v. Harris, 105 Texas, 320, 148 S. W., 284. There, the telegraph company defended upon the same ground, namely, that the addressee of the message, though residing in the town of the receiving office, lived beyond the company's free delivery limits as there established, and, hence, it was under no duty to make the delivery beyond such limits, no extra compensation therefor having been paid or guaranteed by the

sender of the message. No demand for such extra compensation, however, was made by the company at the sending office. The fact that the addressee lived outside of the free delivery limits was held under such circumstances to constitute no defense. In the opinion of Mr. Justice Dibrell is found this clear statement of the law upon the subject:

"We think the legal effect of permitting telegraph companies to prescribe reasonable free delivery districts beyond which they are authorized to make an extra charge for delivering messages, should and does not affect the question of promptness of delivery, except in those cases where a demand is made on the part of the company for the extra fee and the sender fails or refuses to pay such extra charge or guarantee its payment. The burden of ascertaining whether the addressee is within or without the free delivery district must rest upon the company, where the addressee lives within the limits of a town or city. It is not reasonable to suppose the sender of a message is familiar with the limits of the free delivery district prescribed by the telegraph company. The company forms the free delivery district and if it wishes to collect the extra fee it is incumbent upon such company to ascertain from the sender the exact location of the sendee in the place where the message is to be transmitted. If that be a burden it rests lighter upon the shoulder of the company than upon that of the sender. The district is of its creation and for its benefit, and we are not willing to say that it is incumbent upon the sender of a message to ascertain at his risk the limits of such free delivery district and tender the extra compensation, but the company must determine that fact from the information in its possession or from such information as may be given it by inquiry of the sender or from other sources, and then make demand for the extra charge. If the addressee lives without the free delivery limits and the sender refuses to pay the extra charge or guarantee its payment, then the company would be justified in refusing to make delivery of the message. . . . There being no allegation (in the plea of the company) that a demand was made by the company for the extra charge and that such extra charge being demanded the plaintiff failed to pay it or guarantee its payment, no legal defense was presented to excuse the want of a prompt delivery of the message."

Another special charge was requested by the telegraph company, addressed to the measure of damages, which, in substance, amounted to an instruction that the plaintiff was not entitled to recover any damages for grief occasioned by the death of his mother. The charge of the court confined the recoverable damages to only those occasioned by such mental anguish as was suffered by the plaintiff through the neglect of the company to make prompt delivery of the messages and his being thereby prevented from attending his mother's funeral. While it would have been proper to give the requested special charge, and we regard the giving of such a charge as the better practice in cases of this character, the judgment should not be reversed because of its refusal. This court so held in Telegraph Co. v. Smith, 88 Texas, 9, reviewing the

opinion of the Court of Civil Appeals for the Fifth District and the dissenting opinion of Chief Justice Lightfoot upon this question, found reported in 30 S. W., 937.

The judgments of the District Court and Court of Civil Appeals are affirmed.

*Affirmed.*