## SENTER BROS. & CO. v. BROOKS SUPPLY CO. et al. (No. 2466.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 11, 1925. Rehearing Denied Jan. 6, 1926.)

**1. Sales ⬯88—Evidence held sufficient to raise issue of fact for jury as to whether there was agreement for immediate delivery.**

In action for breach of contract for delivery of oil drilling machine, evidence that seller had advised purchasers that rig was ready and would be shipped at once *held* to raise issue for jury as to agreement for immediate delivery.

**2. Damages ⬯9—For every breach of contract the law conclusively presumes that nominal damages are suffered.**

For every breach of contract the law conclusively presumes that nominal damages are suffered.

**3. Sales ⬯416(2)—Excluding evidence of traveling expenses incurred in effort to secure prompt delivery held proper.**

In action to recover for damages for delay in shipping oil drilling machine, *held* that exclusion of testimony of one of members of purchasing company relative to traveling expenses incurred in effort to secure prompt delivery, and amount spent in unloading and caring for machine after reaching destination, was not error.

**4. Sales ⬯420—Refusal to direct verdict for plaintiffs because of breach of contract for immediate delivery of oil drilling machine held not error.**

In action to recover damages for breach of contract for delivery of oil drilling outfit, where plaintiffs alleged that they were damaged because of loss of profits which would have been made, had machine been shipped in time, *held*, that refusing to direct verdict for plaintiffs was not error.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suit by Senter Bros. & Co. against the Brooks Supply Company and others. From a judgment for defendants, plaintiffs appeal. Reversed and remanded.

See, also, 245 S. W. 101.

---

(278 S.W.)

Taylor, Muse & Taylor, of Wichita Falls, and E. G. Senter, of Dallas, for appellants.

Cook, Spencer & Stacy, of Wichita Falls, and W. D. Gordon, of Beaumont, for appellee Brooks Supply Co.

J. L. Lackey, of Wichita Falls, for appellee Peterson.

JACKSON, J. This suit was instituted in the district court of Wichita county, Tex., by Senter Bros. & Co., plaintiffs, against the Brooks Supply Company, a corporation, and H. J. Peterson, defendants. The plaintiffs are a copartnership composed of E. G. Senter, E. G. Senter, Jr., and Selden Senter, and allege that about July 5, 1919, the Brooks Supply Company, for a valuable consideration, sold to H. J. Peterson, by written contract, a rotary oil well drilling outfit, and thereafter, on July 8th, H. J. Peterson, for a valuable consideration, sold said drilling outfit to plaintiffs, and assigned them all his rights in the written contract of sale; that at the time of these transactions there was, in what is known as the Burkburnett oil field and the northwest extension thereof in Wichita county, Tex., a greater demand for oil well drilling rigs with which to drill wells for oil than the available rigs could supply, and, by reason of this excessive demand, prices for drilling were $9 to $10 per lineal foot; that the excessive demand for drilling rigs and the high price for drilling were the inducements that caused plaintiffs to purchase said rig; that it was agreed and understood by all parties to each of said transactions that time was of the essence of the contract, and that said drilling outfit should be immediately shipped to Iowa Park, Tex.; that both of the defendants knew that, if the drilling outfit was promptly delivered according to the contract, plaintiffs would be able to earn therewith a profit of from $6,500 to $10,000 per month; that, while plaintiffs were negotiating with defendant H. J. Peterson for the drilling outfit they called the Brooks Supply Company at Beaumont by phone, advised it of their negotiations, and inquired if the rig sold to H. J. Peterson was ready for shipment, and was informed by Mr. Brooks, the president of the Brooks Supply Company, that the rig was ready for shipment, and the plaintiffs informed said president that Selden Senter, a member of the firm of Senter Bros. & Co., would come to Beaumont promptly and arrange for the shipment of said rig to Iowa Park, Tex., and that the president of said company thereupon agreed to ship said rig at once; that the president of the Brooks Supply Company declared his knowledge of the conditions existing in the oil field relative to the demand for drilling machinery, and told plaintiff he could get for him $1,000 bonus on the contract if he desired to sell it; that about the 10th of July following Selden Senter arrived at Beaumont, and demanded immediate delivery of the drilling outfit to the railroad for shipment to Iowa Park, and remained there and continued such demand from day to day, but, in violation of the contract and agreement, the Brooks Supply Company failed and refused to deliver the rig until August 1st thereafter, when it was loaded on the railroad and shipped to Iowa Park; that at the time of the contract there was no embargo on freight shipments to Iowa Park, and a permit was issued by the proper authorities of the railroad for the shipment of this rig, and, if it had been delivered and shipped as agreed, it would have been promptly forwarded to its destination; that on July 25, 1919, under the authority of the United States Railroad Administration, an embargo was placed upon the shipment of all such machinery as constituted this drilling rig, by reason of which said rig was delayed in transit, and did not arrive at Iowa Park until August 18, 1919, by which time the demand for drilling oil wells in said oil field virtually ceased, because of which plaintiffs were unable to obtain a contract to drill an oil well, and the drilling outfit remained idle for four months; that, but for the failure of the defendants to deliver and ship said rotary rig as promised and agreed, it would have arrived at the oil fields before the demand for drilling ceased, and plaintiffs could and would have contracted for the drilling of oil wells at $9 per foot for a period of at least four months, out of which contracts they would have made a profit of not less than $6,500 per month, or a total of $26,000.

Plaintiffs allege some special items of damages, and seek to recover $29,000 costs, etc.

A copy of the written contract between the defendants and a copy of the assignment of said contract from H. J. Peterson to plaintiffs are attached to plaintiffs' petition and made a part thereof. The contract between H. J. Peterson and the Brooks Supply Company, dated July 5, 1919, is properly transferred to plaintiffs, and provides for the sale, consideration, and terms of payment; that the material and supplies, a list of which is in the contract, had been inspected and accepted by the purchaser, and also stipulates:

" 'Brooks Supply Company gives Mr. Peterson order on Lucey Manf. Co. of Houston for one grief stem. And copy of telegram sent to the Moon Manf. Co. of Chicago for one generator to be shipped by express direct to Burkburnett. Also copy of telegram sent to Desota Foundry & Machine Company, of Mansfield, La., for slips and rings of rotary, to be shipped direct, by express, Mr. Peterson paying the difference between express and 90 cents freight rate. If Mr. Peterson decides to cancel the order for the pumps, he may do so, providing they are not on the car by that time, deducting $517 each. Brooks Supply Co. is to give Mr. Peterson the first set of draw works from the Beaumont Iron Works, after the one promised us to-day. If Mr. Peterson decided to

get a larger pump in Houston, he can have same charged to us, and we will deduct the smaller pumps, giving him credit for the difference between the large pump and the two small pumps.'"

The Brooks Supply Company answered by general demurrer, special exceptions, general denial, admitted the execution of the contract between it and its codefendant H. J. Peterson, and pleaded that on August 2, 1919, plaintiffs were present at its place of business in Beaumont, Tex., at the loading of the rig on the railroad, and aided and participated therein, and had been there for many days prior to that date superintending and supervising the loading, and thereupon accepted the rig without complaint or claim of default, and received such rig on the 2d of August during the pendency of the alleged embargo, and that the rig was billed out pursuant to the contract and the shipper's order with a draft attached to the bill of lading, which the plaintiffs delayed to take up promptly pursuant to the agreement and contract, and thereby the plaintiffs are estopped and concluded by their own acts in asserting and claiming damages against the Brooks Supply Company.

H. J. Peterson answered by general demurrer; admitted that he entered into the contract with his codefendant; that he sold the contract to the plaintiffs, conditioned that they would perform and carry out his agreements therein; and that he had nothing to do with the oral agreements between plaintiffs and his codefendant, the Brooks Supply Company; and that he was not liable for any damages complained of or sustained by plaintiffs, but, that, if he is, the Brooks Supply Company is liable to him for failure to comply with its agreement with plaintiffs.

The case was tried with a jury, and at the close of the testimony the court peremptorily instructed a verdict in favor of each of the defendants against the plaintiffs. The jury, in response to such instructions, returned their verdict upon which judgment was entered in favor of the defendants, who are hereinafter called appellees; and plaintiffs, hereinafter called appellants, have appealed to this court to have the action of the trial court reviewed.

Appellants assign as error the action of the trial court in directing a verdict in favor of the defendants against them, because the record discloses that the testimony presented issues of fact which should have been submitted to the jury for determination.

We shall refrain from any comment on the weight of the testimony or any detailed statement thereof, but the testimony offered by appellants tended to show that they purchased the oil well drilling rig from H. J. Peterson on his assurance of immediate delivery; that the Brooks Supply Company, acting by and through its president, Mr. Brooks, advised plaintiffs on July 8, 1919, before they closed the deal for the purchase of the rig with H. J. Peterson, that the rig was ready for shipment; agreed that, if Selden Senter would come to Beaumont promptly, and arrange for loading the outfit on the railroad, it would be shipped at once. The uncontroverted evidence discloses that Selden Senter reached Beaumont about July 10th, demanded the delivery of the rig to the railroad for loading and shipment, but that it was not delivered and loaded until August 2, 1919.

[1] Appellants' contention that the defendants agreed to an immediate delivery and shipment of the rig to them at Iowa Park, Tex., was sharply controverted, but, in our opinion, the testimony raised an issue of fact which appellants were entitled to have determined by the jury.

[2] If the jury had found with appellants on the issue that appellees had promised and agreed for the immediate delivery and shipment of the well drilling rig, it follows that appellees had breached their contract; and for every breach of a contract the law conclusively presumes that nominal damages were suffered.

In the case of Davis v. Texas & Pacific Ry. Co., 91 Tex. 505, 44 S. W. 822, the court says:

"If plaintiff established the facts above indicated, he was entitled to nominal damages and costs, and the erroneous charge, depriving him of such a verdict, was cause for reversal, though he may have made no proof showing that he was entitled to an additional amount as actual damages. He may have been content to waive the latter."

In Raymond v. Yarrington et al., 96 Tex. 443, 72 S. W. 580, 73 S. W. 800, 62 L. R. A. 962, 97 Am. St. Rep. 914, Chief Justice Gaines for the court states:

"That the evidence does not show how much, if any, the plaintiff was damaged, and it may be that if, under the testimony and a proper instruction, the jury had given only nominal damages, the court should not have disturbed the verdict," but holds "that the court erred in instructing a verdict for the defendant Harwood," because, "if Harwood violated his contract, the plaintiff was entitled to recover, at all events, nominal damages."

In the case of Moore et ux. v. Beakley, 215 S. W. 957, the trial court directed a verdict in favor of the defendant, and the judgment entered thereon was affirmed by the Court of Civil Appeals, and the Commission of Appeals, through Justice Strong, holds that, if the plaintiffs were induced to enter into the contract by false representations, they would be entitled to recover at least nominal damages and costs, citing 1 Sedgwick on Damages (9th Ed.) p. 174; 1 Sutherland on Damages, p. 10; 13 Cyc. p. 14; Davis v. Railway, 91 Tex. 505, 44 S. W. 822; Raymond v. Yarrington, 96 Tex. 443, 72 S. W. 580, 73 S. W. 800, 62 L. R. A. 962, 97 Am. St. Rep. 914; Porter v. Kruegel, 106 Tex. 29, 155 S. W.

174; Duffy v. McKenna, 82 N. J. Law, 62, 81 A. 1101; Northrop v. Hill, 57 N. Y. 351, 15 Am. Rep. 501.

[3, 4] Appellants also assign as error the action of the trial court in excluding the testimony of E. G. Senter, Jr., to the effect that plaintiffs had incurred traveling expenses amounting to $250 in an effort to procure the prompt delivery of the rig, and $700 in unloading and caring for the rig after it reached Iowa Park. These assignments are overruled. Neither did the court err, as contended by appellants, in refusing to direct a verdict in their behalf.

For the error of the court in directing a verdict, in favor of the defendants, the judgment is reversed and the cause remanded.