## WESTERN UNION TELEGRAPH CO. v. SCARBOROUGH et al.

### No. 3669.

Court of Civil Appeals of Texas. Amarillo. Nov. 4, 1931. .

Rehearing Denied Jan. 6, 1932.

Wilson, Randal & Kilpatrick, of Lubbock, for appellant.

Vickers & Campbell, of Lubbock, for appellees.

HALL, C. J.

Mrs. Scarborough, joined by her husband, Roy Scarborough, sued the Western Union

Telegraph Company, alleging: That S. B. Burkhart was the father of Rosa Mae Scarborough. That he died near Sulphur Springs, Tex., March 20, 1930, and on that day the following telegram was sent:

"Sulphur Springs, Texas,
            "8:10 A. M., March 20, 1930.
"Roy Scarborough, Box 394, Levelland, Texas.
    "Father is dead.
                    "Mollie Burkhart."

That the telegram reached Levelland, Tex., at 8:58 a. m., but was not delivered to Scarborough nor his wife until some thirty hours after it arrived at Levelland. That, if it had been delivered promptly, Mrs. Scarborough would have attended her father's funeral, but it was not delivered until such time that it was too late for her to attend the funeral. That the company was guilty of negligence in not delivering it, and by reason of such negligence she was not able to attend the funeral, and suffered mental anguish in the sum of $2,500.

The appellant denied the allegations in plaintiffs' petition generally, and alleged: That on March 20, 1930, one W. T. Glossip, agent of the plaintiffs, appeared at the telegraph office at Sulphur Springs and gave the message to Lloyd Dennis, messenger boy of the appellant company at that place. That the message was written by Lloyd Dennis and submitted to Glossip for approval, and that he approved it. That the company advised the sender of the message that the telegram would have to be mailed unless a better address was given. That no better address was given, and, after the message reached Levelland, the company was unable to locate the addressee, and place the message in the post office, properly stamped and addressed. That it was actually received by the Scarboroughs in time for them to have attended the funeral of S. B. Burkhart if they had desired so to do. That the message was written upon a blank form, which stipulated on its face that it was sent subject to the terms on the back thereof. That one of the terms on the back of the message blank is as follows: "In the case of intra-state messages in Texas the Company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within ninety-five days after the cause of action, if any, shall have accrued." That the Scarboroughs had notice of this provision through the sender of the message, and are bound by it. That no written claim was ever filed with the telegraph company on this message, and the suit was not filed until more than ninety-six days after the alleged cause of action arose. The answer was duly verified.

By supplemental petition plaintiffs alleged that they did not have any notice of the ninety-five day clause on the back of the telegraph blank upon which the original message was written, and that the telegram as delivered to them did not have any ninety-five day clause printed on its back.

The case was submitted to a jury upon special issues, in response to which the jury returned the following findings: (1) The witness Glossip informed the agent at Sulphur Springs at the time the message was given for transmission that S. B. Burkhart, deceased, was the father of Mrs. Scarborough, the plaintiff herein. (2) The telegraph company did not use ordinary care to deliver the message in question to Roy Scarborough. (3) The plaintiffs nor either of them had any notice until after they filed this suit that they were to file a claim for damages within ninety-five days from the date the message was delivered. (4) Mrs. Scarborough would have filed or caused to be filed her claim for damages within ninety-five days from the date of the message if she had known of the printed stipulation to that effect on the back of the message. (5) Mrs. Scarborough would have attended the funeral of her father if the message had been delivered to her or her husband within a reasonable time after it was sent. (6) As the direct and proximate result of her failure to attend the funeral, Mrs. Scarborough sustained damages in the sum of $1,050.

Judgment was entered accordingly.

■ It is contended under the first proposition that, because of the ninety-five day limitation for filing the claim for damages and the failure of the plaintiffs to file such claim, the court erred in refusing to instruct the jury not to consider the testimony of Scarborough to the effect that written claim would have been filed within ninety-five days if plaintiff had had notice of such conditions.

By the second proposition, the appellant company insists that, because the blank upon which the message was written contained this notice: "Send the following message subject to the terms on the back hereof, which are hereby agreed to"; and upon the back of the message there was printed the ninety-five day notice of claim stipulation, and further because no written claim for damages was ever filed with the company and the suit was not filed until more than ninety-six days after the message was actually received, the court erred in not instructing a verdict in favor of the company. These two propositions are submitted together.

R. S. art. 5546, provides that no stipulation in a contract requiring notice to be given of a claim for damages as a condition precedent to the right to sue thereon shall ever be valid, unless such stipulation is reasonable; that any such stipulation fixing the time at less than ninety days shall be void.

In the case of Taber v. Western Union Telegraph Co., 104 Tex. 272, 137 S. W. 106, 34 L. R. A. (N. S.) 185, Judge Dibrell said that that statute was general in its application,

and was not designed to embrace telegraph companies alone. The statute has been construed against railroads, insurance companies, and other corporations, and it is held that the duty rests upon such companies to plead and prove the reasonableness of the stipulation. Francis v. International Travelers' Association (Tex. Civ. App.) 260 S. W. 938; St. Louis, B. & M. Ry. Co. v. Marcofich (Tex. Civ. App.) 185 S. W. 51; Southern Kansas Ry. Co. v. Hughey (Tex. Civ. App.) 182 S. W. 361; International Travelers' Association v. Griffing (Tex. Civ. App.) 264 S. W. 263; Western Union Telegraph Co. v. Cates (Tex. Civ. App.) 282 S. W. 661; 8 Texas Jur. § 249; Texas & P. Ry. Co. v. McGilvary (Tex. Civ. App.) 29 S. W. 67.

The appellant alleged that the ninety-five day stipulation was reasonable, but introduced no testimony in support of the allegation. The only proof bearing upon that issue is the testimony of Roy Scarborough, who says that the telegram mailed to him and received about 8 o'clock on the night of the 21st of March was written upon a blank which had no notice or stipulation of any kind printed either on its face or back, and that plaintiffs had no notice of the ninety-five day provision until this suit was filed. The plaintiffs' petition is so framed as to entitle them to recover, either upon an implied contract or ex delicto. Western Union Telegraph Co. v. Alred (Tex. Civ. App.) 4 S.W.(2d) 666. Plaintiffs did not sue upon the contract. It has been injected into the case by the appellant's answer. The notice upon the face of the telegram made the ninety-five day stipulation a part of the contract, and every consideration of fairness and equity required that the message, when taken from the wire, should have been written on the same kind of a blank. The uncontradicted testimony is that the telegram as received by the plaintiffs contained neither a notice nor any stipulation of any kind, and the failure of the appellant's operator at Levelland in taking the telegram from the wire to write it out upon the same kind of a blank upon which it received the message is, under all the circumstances, a fraud in law. The record shows that it was about five hundred miles from Levelland, the place of destination, to Sulphur Springs, the initial point, and in the nature of things several days would be required for the sender of the telegram to notify the plaintiffs of the ninety-five day stipulation, even if this could be held to be a requirement.

■ The record shows that Glossip, who had the Sulphur Springs operator to write out the telegram for him, was a neighbor of the Burkhart family, doing a kindly act for the bereaved wife in her hour of gloom, and that no legal duty rested upon him to notify either the widow or the daughter of the deceased that the blank upon which the message was written contained a ninety-five day notice stipulation. Indeed, he was justified in believing that the death message would be promptly delivered, in which case no necessity for such a notice would arise. When, under all the circumstances, it cannot be reasonably expected that an agent will notify his principal of facts coming to his knowledge, the rule that notice to an agent is notice to the principal does not apply—especially is this true when the notice to the agent is constructive and not actual, as in this case.

■ The trial court would not have been justified, as a matter of law, in holding that the plaintiffs were not entitled to recover because of their failure to give notice, in view of the fact that the statute says that the notice must be reasonable. The operator at Sulphur Springs may be held as the agent of the sender in writing out the telegram which was given to him verbally, but he was not the agent of the sender in writing the verbal message upon a blank which resulted in its acceptance under the terms of a contract. He must of necessity have represented the telegraph company in that particular. His agency for the sender is special, and is limited to the act of writing the telegram. Apart from the contract evidenced by the stipulations printed upon the message, appellant is liable for the breach of its common-law duty, and, before the appellant should be allowed to defend because of the failure of the sendees to comply with the terms of the contract, every consideration of equity requires that they should have notice of the terms.

■ As said in the Francis Case, supra, the purposes of notice is to convey knowledge or to bring home to the one affected thereby facts or information that will enable him to guard against fraud, to investigate facts upon which the claim is based, or to prepare himself to satisfactorily meet or contest said claim. It does not appear from the record that the failure of the appellees to give the notice within the required time has resulted in any injury to the appellant. Both the operator who sent the telegram, the messenger boy, and the operator at the point of destination testified as witnesses. When the reason of the rule does not exist, equity requires that the rule itself should not be enforced. In affirming the Francis Case, Judge Cureton said [119 Tex. 1, 23 S.W.(2d) 282, 287]: "The opinion of the Court of Civil Appeals on all the questions involved is manifestly correct, and we deem further discussion unnecessary."

In the case of Fidelity & Casualty Insurance Co. v. Mountcastle (Tex. Civ. App.) 200 S. W. 862, 865, it is said: "There is nothing in this record tending to show that by reason of the delay in giving the written notice provided for in the policy that the appellant company was placed in a disadvantageous position, or that it has lost any rights that it would have had had the notice been given within the 90 days."

■ We cannot assent to the proposition that appellant could write out a message, verbally given, upon a blank which makes printed stipulations on the back of the blank a part of the contract, at the initial point, and bind the sendee, living five hundred miles distant, by stipulations, when the message as delivered to him was upon a blank without any stipulations whatever. A party cannot profit by his own wrong. In omitting the stipulations at Levelland, it should be held that the company has waived them, although they appeared upon the back of the original message at Sulphur Springs.

As said in Western Union Telegraph Co. v. Timmons, 59 Tex. Civ. App. 146, 125 S. W. 376, 379: "Until plaintiff had the opportunity of seeing the message and knowing its contents, as well as the stipulation requiring him to present his claim for damages within the 90 days, he certainly could not be held to have forfeited his right by reason of a stipulation he knew nothing of."

■ But, aside from all this, the appellant company did not have the issue of the reasonableness of the stipulation submitted to the jury, and we must therefore hold that, in failing to do so, it abandoned that independent defense. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

■ The next contention is that the court erred in refusing to submit three special issues at the request of appellant, inquiring whether the sender of the message agreed to pay delivery charges outside of the free delivery limits at Levelland, whether the defendant mailed the telegram, properly addressed and stamped, and whether it was mailed within a reasonable time after it was received at destination.

These issues were not controverted, and we think were wholly immaterial. Whether the message was mailed within a reasonable time is unimportant, in view of the jury's finding that the appellant did not exercise ordinary care in delivering the message. The evidence is conflicting as to whether Roy Scarborough's home was beyond the free delivery limits, but it was shown that he worked and could have probably been found within the limit. Even if Scarborough resided beyond the limit, this does not excuse the failure of the company to promptly deliver the message, in the absence of a demand for an extra charge before accepting the message for transmission.

In Western Union Telegraph Co. v. Cowan (Tex. Civ. App.) 271 S. W. 650, 651, Judge Fly quotes from Western Union Telegraph Co. v. Harris, 105 Tex. 320, 148 S. W. 284, and says it is clear from that decision that the ascertainment of whether the person to whom the message is to be sent is within the free delivery limits must be made before the message is accepted and a contract to deliver is made, and the demand for extra charge must be made then, and not after the damage has probably been caused.

The Harris Case is cited with approval in Western Union Telegraph Co. v. Davis, 24 Tex. Civ. App. 427, 59 S. W. 46, and by the Supreme Court again in Western Union Telegraph Co. v. Wilson, 108 Tex. 375, 194 S. W. 385, in which case it is held that, where no demand for extra charges was made when the message was received for transmission, it constituted no defense in an action for nondelivery that the sendee of the message lived outside of the delivery limits. The operator at Levelland testified that immediately upon receipt of the telegram he called the Alexander Drug Store and the Pool Drug Store in Levelland and left word for Scarborough; that he was informed that Scarborough drove a school bus, and he called the superintendent of schools at 9:15 a. m. and left word for Scarborough; that he made no other effort to deliver the message. The School Superintendent testified that, if the telegraph operator had told him that he had a death message for Scarborough, he certainly would have conveyed the news to Scarborough, and would have seen that the message was delivered; that he knew where Scarborough resided, and would have sent the word to his house.

■ The mailing of a telegram which designates the post office box of the addressee is, not a fulfillment of the telegraph company's contractual or legal duty. Western Union Telegraph Co. v. Freeland (Tex. Civ. App.) 12 S.W.(2d) 256; Postal Telegraph-Cable Co. v. Prewitt (Tex. Civ. App.) 199 S. W. 316.

■ By the sixth proposition appellant insists that the court erred in submitting special issue No. 3, inquiring whether plaintiffs or either of them had any notice that they were to file a claim for damages with the defendant within ninety-five days from the date the message was delivered until after they filed this suit, and it is further insisted that the court erred in submitting special issue No. 4, which inquires whether Mrs. Scarborough would have filed her claim for damages in writing within ninety-five days after the message was delivered if she had known that such stipulation was on the back of the original message.

The court did not err in submitting these issues, though, in view of what we have said in disposing of the first and second propositions, it would seem that the inquiries are immaterial, because that defense had been abandoned by the failure of appellant to have the issue of the reasonableness of the stipulation submitted to the jury. The court instructed the jury that, if they answered special issue No. 3 in the negative, then to answer No. 4. The particular objection to No. 4 is that it assumes that the plaintiffs did not have notice of the terms of the ninety-five day clause when the blank upon which it was

written had the clause printed upon the back. For the reasons stated, we overrule these contentions.

Appellant also objected to special issue No. 5, which inquired whether Mrs. Scarborough would have arranged and attended the funeral of her father if the defendant had delivered or caused the message to be delivered to plaintiffs within a reasonable time after it was sent.

The objection to this issue is that it assumes that the message was not delivered within a reasonable time after it was sent, and assumes negligence on the part of defendant in handling the message, and was therefore upon the weight of the evidence. The appellees alleged that they would have attended the funeral if the message had been promptly delivered, and testified that they could and would have attended, had they received the message on the 20th of March. The court instructed the jury to answer the fifth issue only in the event they answered the third issue to the effect that the Scarboroughs did not have any notice of the stipulation to file their claim for damages within the ninety-five day period. The charge must be considered as a whole, and, when so considered, there is no error in this particular.

Special issue No. 6 is as follows: "What amount of damages, if any, do you find in favor of plaintiff Rosa Mae Scarborough, suffered and sustained by her as a direct and proximate result of her not attending the funeral of her father on account of the alleged failure of the defendant to use ordinary care in delivering the telegram introduced in evidence. Answer nothing or in dollars and cents as you may find."

The defendant objected to said issue, for the reason that it assumed the telegraph company did not use ordinary care in delivering the telegram in question. This objection is without merit, because the court uses the words on account of the "alleged failure" to use ordinary care.

A further objection is urged because it assumes that Rosa Mae Scarborough did suffer and sustain damages by reason of not attending the funeral, and it is insisted that the issue is duplicitous.

It does assume that she suffered damages, but damages are presumed where the proof shows the violation of a legal right. Hope v. Alley, 9 Tex. 394; Senter Bros. & Co. v. Brooks Supply Co. (Tex. Civ. App.) 278 S. W. 334; Lawless v. Evans (Tex. App.) 14 S. W. 1019; Cotherman v. Oriental Oil Co. (Tex. Civ. App.) 272 S. W. 616.

Under the rule announced by these authorities, proof of the failure to perform a legal duty entitled the appellees to recover at least nominal damages, and the evident purpose

of the inquiry was to have the jury fix the amount thereof.

It is further contended that the court erred in submitting special issue No. 2, inquiring whether the company used ordinary care to deliver the telegram to the addressee, Scarborough. The objection to this is that the plaintiff alleged two acts of negligence, viz., a failure to use ordinary care in delivering the message and a failure to mail the message promptly in the post office at Levelland. This issue submits the only material inquiry. Under the circumstances in this case, it was immaterial whether the message was dropped into the post office or not.

The final contention is that the verdict and judgment are excessive. We overrule this contention.

Finding no reversible error, the judgment is affirmed.