NOAH HOBBS v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 21 March, 1934.)

1. **Telegraph Companies A c—Proof of failure to deliver message in reasonable time establishes prima facie case of negligence.**

Where it has been shown that a telegraph company failed to deliver a death message between its offices within the State in twenty-four hours a prima facie case of negligence is made out, placing the burden on defendant to rebut the prima facie case, if it chooses to do so, the burden remaining on plaintiff on the issue of defendant's negligence.

2. **Same—Where there is no conflict in telegraph company's evidence in rebuttal of prima facie case, directed verdict in its favor is not error.**

Where all the evidence introduced by defendant telegraph company tends to rebut a prima facie case of negligence on its part in delivering a telegram, and there is no conflict in the evidence as to the facts constituting such rebuttal, the company is entitled to an instruction that if the jury finds the facts to be as testified by the witnesses to answer the issue of negligence in defendant company's favor.

3. **Telegraph Companies A b—Where address indicates that sendee lives beyond free delivery limits, company need not advise sender of fact.**

Where the address given on a telegram shows that the sendee and the person in whose care the message is sent lives on a rural free delivery mail route from the terminal office beyond the free delivery limits of the telegraph company and probably beyond the limits of the city, the company may assume that the sender knew the facts and had given the best address known, and it is not under duty to send a service message to sender giving notice that the telegram could not be delivered by messenger without the payment of an additional charge, and having failed, after due diligence, to locate the sendee or the person in whose care the message was sent by telephone, it is justified in delivering the message by posting it at the terminal office.

CLARKSON, J., dissenting.

APPEAL by plaintiff from *Shaw, Emergency Judge,* at March Special Term, 1933, of DAVIDSON. Affirmed.

This is an action to recover damages for mental anguish suffered by plaintiff as the result of the alleged negligent failure of the defendant to deliver, within a reasonable time after its receipt at defendant's office in Lexington, N. C., a telegram addressed to the plaintiff, advising him of his mother's death.

At 9:16 a.m., on 1 September, 1932, a telegram was delivered to the defendant at its office in Monroe, N. C., by Mrs. E. M. Flow, a sister of the plaintiff, for transmission and delivery to the plaintiff, at his home near Lexington, N. C., which was in words as follows:

"Monroe, N. Car. 9:16 A 1 Sept. 1932.
Noah Hobbs
R. F. D. 5. Care J. S. Deal, Lexington, N. Car. Mother died this morning at 6:30.                  Mrs. M. E. Flow."

This telegram was received at defendant's office in Lexington, N. C., at 9:23, on 1 September, 1932. It was delivered to the plaintiff, by mail, at his home on R. F. D. No. 5, near Lexington, N. C., at 12:30 p.m., on 2 September, 1932, by the wife of J. S. Deal, who had found the telegram in an envelope addressed to the plaintiff, in her husband's mail box. The envelope containing the telegram was deposited in the mail box by the carrier who had left Lexington at 9:00 a.m. that morning, as required by his daily schedule.

Upon his receipt of the telegram, the plaintiff immediately left his home in Davidson County in an automobile, and drove to Monroe, in Union County, a distance of 70 miles. Upon his arrival at Monroe, at about 5:00 o'clock, p.m., on 2 September, 1932, the plaintiff had learned that his mother's funeral had been held that morning at 11:30 o'clock. He testified that the fact that he had not attended his mother's funeral affected him deeply, causing him great suffering in both mind and body. He said: "If I had got the telegram in time, I could have attended my mother's funeral."

The manager of defendant's office at Lexington, N. C., testified as follows:

"At 9:23 a.m., on 1 September, 1932, a telegram addressed to Noah Hobbs, R. F. D. 5, care J. S. Deal, Lexington, N. C., came to my office from Monroe, N. C. I did not know Mr. Hobbs or Mr. Deal. I·did not know where either of them lived. Upon receipt of the telegram, which was a death message, I got the telephone directory of the city of Lexington to see if either Mr. Hobbs or Mr. Deal had a telephone. I found that neither of them had a telephone. Their names were not in the directory. I then called the rural operator, and was informed by him that neither Mr. Hobbs nor Mr. Deal had a telephone connecting with

the city exchange. I then called Reed's Exchange, which is in Davidson County, about five or six miles from my office—in the country. I was informed that neither Mr. Hobbs nor Mr. Deal had a telephone connecting with Reed's Exchange. No one at the exchange knew either of them. I then called Churchland Exchange, which is a little further in the country from Lexington than Reed's Exchange. I was informed that neither Mr. Hobbs nor Mr. Deal had a telephone connecting with Churchland Exchange. No one at the exchange knew either of them. The reason I called these two exchanges was that route No. 5 from Lexington goes in the direction of these exchanges, and persons living on said route are served by these exchanges. After I had been unable to locate either Mr. Hobbs or Mr. Deal, I called the agent of the defendant at Monroe, by wire, and advised him that I had been unable to locate either Mr. Hobbs or Mr. Deal, that neither of them had a telephone, and that I had mailed the telegram to Mr. Hobbs, at the address given in the telegram. I mailed the telegram some time before dinner, as I now remember, on 1 September, 1932. The mail for route No. 5, leaves Lexington each morning at 9:00 o'clock. The telegram addressed to the plaintiff left Lexington on the first mail which went out of Lexington for route No. 5 after its receipt.

"The defendant's free delivery limits at Lexington extend one mile from its office. Both Mr. Hobbs and Mr. Deal live beyond the free delivery limits. I did not know either of them on 1 September, 1932, and did not know where either of them lived. Sometimes when I know where the addressee in a telegram lives, beyond the free delivery limits, I take a chance and send the telegram by special messenger, expecting him to pay the charge for delivery. If I know where the addressee lives, and his home is beyond the free delivery limits, I have the sender advised, so that the extra charge for delivery may be paid or guaranteed by him, if he desires us to deliver the telegram by messenger."

Mrs. E. M. Flow, the sender of the message, testified that she paid the amount charged by the defendant's agent at Monroe for the transmission and delivery of the telegram to the plaintiff, and that she was not informed by said agent or by any one else, that an extra charge would be made for the delivery of the telegram to her brother, by a special messenger. She would have been willing to pay the extra charge, if advised by the defendant that such charge was required.

At the conclusion of all the evidence, the court refused to allow defendant's motion for judgment as of nonsuit, but intimated that it would instruct the jury that if they should find the facts to be as testified by the witnesses, they should answer the first issue, to wit: "Did the defendant negligently fail to transmit and deliver the telegram from Monroe, N. C., as alleged in the complaint," "No."

Upon this intimation by the court, the plaintiff submitted to a non-suit, and appealed to the Supreme Court.

*D. L. Pickard for plaintiff.*
*Walser & Walser, Chas. W. Tillett and Francis R. Stark for defendant.*

CONNOR, J. It is not contended on this appeal that there was any evidence at the trial of this action tending to show negligence on the part of the defendant in transmitting the telegram addressed to the plaintiff from Monroe to Lexington. All the evidence showed that the telegram was filed at defendant's office in Monroe at 9:16 a.m. and was received at defendant's office in Lexington at 9:23 a.m., on the same day. The defendant fully performed its contract with the sender and its duty to the sendee of the telegram with respect to its transmission from Monroe to Lexington. On the facts shown by all the evidence, there is and can be no contention to the contrary.

The telegram, however, although received by defendant at its office in Lexington at 9:23 a.m., on 1 September, 1932, was not delivered to the plaintiff until 12:30 p.m. on 2 September, 1932. There was a delay of more than twenty-four hours in the delivery of the telegram after its receipt by the defendant at its office in Lexington. Nothing else appearing in the case, such delay would constitute at least evidence of negligence on the part of the defendant, with respect to the delivery of the telegram, sufficient to carry the case to the jury, and if unaccounted for by the defendant would entitle the plaintiff to a verdict on which the defendant would be liable to the plaintiff for the damages sustained by him and resulting from the negligence of the defendant. It is well settled that where a telegraph company has received a telegram for transmission and delivery to the sendee, and after its prompt transmission to its terminal office, has failed to deliver the telegram to the sendee within a reasonable time, because of its failure to exercise due diligence to make a prompt delivery, the company is prima facie liable to the sendee for any damages he has sustained which resulted from the unreasonable delay to deliver the telegram to him. *Hendricks v. Telegraph Co.*, 126 N. C., 304, 35 S. E., 43. In such case the burden is on the defendant, if it denies liability, to offer evidence to rebut the prima facie case for the plaintiff. The burden of the issue involving liability, however, remains on the plaintiff. Such burden is not shifted to the defendant, who may or may not offer evidence to rebut the prima facie case made by the evidence offered by the plaintiff. *Speas v. Bank,* 188 N. C., 524, 125 S. E., 398. Where all the evidence offered by the defendant rebuts the prima facie case made by the evidence offered by

the plaintiff, and there is no controversy between the parties as to the facts shown by the evidence, the defendant is entitled to an instruction of the court to the jury that if the jury shall find the facts to be as all the evidence tends to show, they should answer the issue involving the liability of the defendant to the plaintiff, in the negative. McIntosh Prac. & Pro., p. 632; *Bank v. Noble,* 203 N. C., 300, 165 S. E., 722; *Somersette v. Stanaland,* 202 N. C., 685, 163 S. E., 804; *Reinhardt v. Ins. Co.,* 201 N. C., 785, 161 S. E., 528. This principle is not in conflict with the right to trial by jury of controverted issues of fact but affords parties to the action the protection of the law, when there is no controverted issue of fact.

In the instant case, the address of the sendee as shown by the telegram delivered by the sender to the defendant at Monroe, and received by the defendant at Lexington, showed that the plaintiff, Noah Hobbs, and the person in whose care the telegram was to be delivered, J. S. Deal, both lived on Rural Free Delivery Route No. 5, out of Lexington. All the evidence at the trial showed that defendant's manager at Lexington did not know Mr. Hobbs or Mr. Deal, and did not know where either of them lived on Route No. 5. In such case, what was the duty of defendant's manager at Lexington with respect to the delivery of the telegram to the sendee?

The address given in the telegram showed that both Mr. Hobbs and Mr. Deal lived beyond the free delivery limits of the defendant at Lexington, and probably beyond the corporate limits of the city. It was a reasonable inference and the evidence shows such to be the fact, that the sender of the telegram knew these facts, and had given the defendant the only address of the sendee which she knew. In such case, the principle that when the sendee of a telegram cannot be located by the agent of the company, because of an insufficient or erroneous address, given by the sender, it is the duty of the agent to ask, by wire, for a better address, is not applicable. It was manifestly the duty of defendant's manager at Lexington to use reasonable diligence to locate Mr. Hobbs, or Mr. Deal, at the address given by the sender of the telegram. He undertook to perform this duty by the use of the telephone, and it was only after he had been unable to locate either Mr. Hobbs or Mr. Deal, by telephone, that he mailed the telegram to the address given by the sender. The telegram was delivered by mail to J. S. Deal, and by his wife to Mr. Hobbs. Whether the defendant's manager would have been justified in mailing the telegram before he used the telephone for the purpose of locating Mr. Hobbs, or Mr. Deal, under the principle on which *Gainey v. Telegraph Co.,* 136 N. C., 262, 48 S. E., 653, was decided, need not be decided. Having failed to locate either Mr. Hobbs or Mr. Deal by telephone, he was justified in using the mail for the

delivery of the telegram to the address given by the sender. On the facts shown by all the evidence, he was not required to notify the sender that the telegram could not be delivered at the address given by her by special messenger. He had a right to presume that she knew this, when she delivered the telegram to the defendant at Monroe.

The intimation of the court as to the instruction which it would give the jury in this case is supported in principle by the decision in *Gainey v. Telegraph Co., supra,* and is in accord with the decision in *Garner v. Telegraph Co.,* 100 S. C., 302, 84 S. E., 829. In that case it was held that the addressing of a telegram to the addressee, "R. F. D. 1," is a direction to the telegraph company to use the mail for delivery, and that the company was not liable for delay thereby occasioned. See 62 C. J., 169. The judgment in the instant case is

Affirmed.

CLARKSON, J., dissenting: The following telegram was sent and the charges paid:

"Monroe, N. Car., 9:16 A, 1 Sept., 1932.
Noah Hobbs
R. F. D. 5 care J. S. Deal, Lexington, N. Car.
Mother died this morning at 6:30.                    Mrs. M. E. Flow."

It was a pathetic message to a brother from a sister on the death of their mother. Mrs. Flow was a sister of Noah Hobbs. He never received the message in time and was thus prevented from seeing the mother's face once more, before her body was committed to the ground.

"Earth to earth, ashes to ashes, dust to dust; looking for the general Resurrection in the last day."

It was alleged and proved "That at the time of sending of the telegram, this plaintiff resided within a quarter of a mile of the corporate limits of the city of Lexington on a good road, and was known generally by a large number of people in and around Lexington, and his home was readily accessible, and if said telegram would have been handled in the usual and customary manner, it would have been delivered to the addressee, this plaintiff, immediately after it arrived in the city of Lexington on the morning of 1 September, 1932." Lexington is a town of about 10,000 inhabitants.

Under the facts and circumstances of this case, I think the matter should have been left to the jury as to due care, such care as an ordinarily prudent person would exercise under the conditions existing at the time he is called upon to act.

I do not think it can be said as a matter of law that the delivery of the telegram in this case was a compliance by the Western Union Telegraph Company with its contractual duty. On a motion as of nonsuit, the evidence is to be considered in the light most favorable to the plaintiff. C. S., 567; *Lynch v. Tel. Co.,* 204 N. C., 252; *Thigpen v. Ins. Co.,* 204 N. C., 551. The evidence in this case should have been submitted to the jury.

While it was held in *Gainey v. Tel. Co.,* 136 N. C., 261, that where a death message was sent to plaintiff directed "Mr. Noel Gainey (P. O. Idaho), Fayetteville, N. C.," and asked plaintiff to "write" if he could not come, the telegraph company was not liable for negligence on receiving the telegram at Fayetteville, in placing it in the postoffice, addressed to the plaintiff. *Associate Justice Walker,* in an exhaustive opinion, clearly limited that decision to the peculiar facts of that case. He pointed out that not only was it indicated that there was a double address, one of them as being the farthest reach of the telegraph service and the other as being the plaintiff's postoffice address, but that it was also indicated that "celerity in the communication between the parties was not in this case the sole inducement for using the electric telegraph" as the plaintiff was directed to "write if you cannot come."

"But whatever the reason of this peculiar wording of the message, we think if the plaintiff was requested to use the mails, the defendant may well be excused for doing likewise," said *Justice Walker.* "It is so apparent from the language of the telegram that the company had the right to suppose that it was expected not to make a special delivery, but simply to post the message at Fayetteville, that there is no conceivable ground upon which we could hold it to have been negligent to deliver by mail instead of by special messenger."

It can readily be seen that the Court, in that case, distinguished the facts so as to make it inapplicable in the instant case. The learned justice, who wrote the opinion, left no doubt that it was decided upon the peculiar facts of that particular case. As further evidence of his intention to limit his decision to the peculiar facts of that case, we quote the following dicta from that opinion: "We have held that when a message is received at a terminal office to which it has been transmitted for delivery to the person addressed, it is the duty of the company to make diligent search to find him and, if he cannot be found, to wire back to the office from which the message came for a better address, and likewise it is the duty of the company, when it has discovered that the person for whom the message is intended, lives beyond its free delivery limits, either to deliver it by a special messenger or to wire back and demand payment or a guarantee of payment, as it may choose to do, of the charge for special delivery and, if it fails to deliver without de-

manding and being refused payment of the charge it will be liable for its default. It is not liable, though, if the sender of the message, when proper demand is made, refuses to pay the extra charge for a special delivery beyond the limits established for free delivery by the company, provided these limits are reasonable."

In the present case, the telegram addressed to "Noah Hobbs, R. F. D. 5, care J. S. Deal, Lexington, N. C.," contained no qualifying or explanatory matter, such as was contained in the message in the *Gainey case,* but conveyed only the statement: "Mother died this morning at 6:30."

While evidence was offered on behalf of the defendant, in the instant case, through its agent at Monroe, that when Mrs. M. E. Flow, sister of the plaintiff, delivered the telegram she was asked to pay an extra charge to guarantee delivery. This was denied by her. It was also testified by the agent of the defendant at Lexington, that he called the agent of the defendant at Monroe and advised him that he had been unable to locate either Mr. Hobbs or Mr. Deal and that he had mailed the telegram to Mr. Hobbs, at the address given in the telegram, however, there was no evidence that the agent at Monroe made any effort to get in touch with Mrs. Flow, sender of the telegram.

Unless the inclusion of the words "R. F. D. 5" as a part of the telegram brings this case into a separate category, there is no doubt that the evidence in this case was sufficient to carry it to the jury. In *Willis v. Tel. Co.,* 188 N. C., 114, this Court, in upholding the admissibility of evidence with reference to the telegraph company's failure to notify the sender of the nondelivery of a message, quoted the following from *Cogdell v. Tel. Co.,* 135 N. C., 431: "If for any reason it (telegraph company) cannot deliver the message, it becomes its duty to so inform the sender, stating the reason therefor, so that the sender may have the opportunity of supplying the deficiency, whether it be in the address or additional cost of delivery. The failure to notify the sender of such nondelivery is of itself evidence of negligence."

While it was held in *Garner v. Tel. Co.,* 100 S. C., 302, 84 S. E., 829, that the addressing of a telegram to the addressee, "R. F. D. 1" is a direction to the telegraph company to use the mail for delivery, and that the company was not liable for the delay thereby occasioned, there is equally impressive authority to the contrary. In the recent case of *Western Union Telegraph Company v. Scarborough* (Tex. Civ. App.), 44 S. W. (2d), 751, it was held that: "The mailing of a telegram which designates the postoffice box of the addressee is not a fulfilment of the telegraph company's contractual or legal duty." In *Western Union Telegraph Co. v. Freeland* (Tex. Civ. App.), 12 S. W. (2d), 256, it was held that: "The addressing of a telegram to a postoffice box was a direction

to deliver the telegram to a person, not a box number." That case, as in the instant case, involved a death message, and the Texas Court logically and correctly points out: "In the very nature of the transaction, notice was given of the importance of the delivery of the message to the person named therein, and it was not a direction for the delivery of same to an inanimate receiver. It is true that it has been held that where a telegram is addressed to one person in care of another, the delivery of the telegram to the party in whose care it is sent is a compliance with the duty that the telegraph company owes under its contract. *Western Union Telegraph Co. v. Young,* 77 Tex., 245, 13 S. W., 985; 19 Am. St. Rep., 751. In that case the sender contracted for it to be delivered to a party who would naturally be supposed to see that it reached the hands of the one for whom it was intended. It might be true that a telegram sent to a particular residence number without being addressed to any person, but delivered to that address, would be a compliance with the contract, but it cannot reasonably be supposed that, when the telegraph company delivered this telegram to box 102, it was thereby making a personal delivery to Mrs. Freeland."

It was pointed out in that case that the telegraph company received the message without requesting more specific directions as to its delivery and that the sender was not requested to furnish a fee for delivery outside of its delivery limits. The Court concluded that "we cannot therefore say, as a matter of law, that the delivery of the telegram in this case was a compliance by the company with its contractual duty." Hence, it was held that the trial court properly submitted the issue, "Did the defendant Western Union Telegraph Company use ordinary care to deliver the death message to Mrs. Freeland?"

The very nature of the use of telegraph facilities contradicts the idea that mails are to be used in the delivery of telegrams. As was pointed out in *Sturtevant v. Western Union Telegraph Co.,* 84 A., 998: "Telegrams are sent because the sender desires the contents communicated to the addressee at once. That method is employed, instead of the mail, because of its dispatch. The message showed that it was the acceptance of an offer. Its importance was apparent upon its face, and when the defendant accepted it, and the money to forward it, in law it undertook to forward and deliver it at once. That was the consideration for which it accepted the plaintiff's money."

Under all the evidence of this case, it was clearly a matter for the jury to decide and the judgment of the court should be reversed.