## CULLUM et al. v. COMMERCIAL CREDIT CO., Inc.

### No. 5070.

Court of Civil Appeals of Texas. Amarillo.

Oct. 23, 1939.

Rehearing Denied Nov. 13, 1939.

Sturgeon & Sturgeon, of Pampa, for appellants.

Clayton & Bralley, of Amarillo, for appellee.

STOKES, Justice.

This suit was instituted by appellee against appellants upon two promissory notes and to foreclose chattel mortgage liens given to secure them. The trial court found the amount due on the notes to aggregate $877, together with interest and attorney's fees, for all of which judgment was rendered, and the chattel mortgage liens were foreclosed.

Appellants did not contest the execution of the notes nor the right of appellee to recover thereon, but they alleged substantially that they were engaged as partners in the sale of automobiles at retail and that appellee was engaged in the business of purchasing and handling for automobile dealers generally what is known as automobile paper, that is, notes, mortgages, trust receipts and other similar obligations executed by dealers and purchasers of automobiles. They alleged that they had sold to appellee from time to time certain notes, mortgages and other such paper as appellee was accustomed to purchase, secured by chattel mortgage and other liens upon automobiles, and that on April 27, 1937, in order to effect a definite understanding as to their liability to appellee on such notes and mortgages, they entered into what is commonly referred to as a reserve agreement. This reserve agreement was in writing and was introduced in evidence. It contained the provision that appellee would set up and credit appellants with certain reserves consisting of 1½% on the first $500 and ½% of all amounts in excess of $500 on paper secured by liens on new automobiles where the paper was payable in twelve months or less and 2% on the first $500 and 1% on the excess on obligations running more than twelve months. Other percentages were provided as to notes secured by mortgages on automobiles and vehicles that had been used. Under this reserve agreement, on July 31, 1938, there had accumulated as a reserve fund in the hands of appellee to the credit of appellants the sum of $1996.06. Appellants pleaded this reserve fund as an offset to the notes sued on by appellee and, to the action of the trial court in refusing to allow the same and in granting judgment in favor of appellee for the balance due on the notes sued on, appellants reserved appropriate exceptions and from the judgment entered in favor of appellee, they gave notice of appeal which they have perfected and now present the case in this court

upon the same contentions represented by appropriate assignments of error.

The case was tried before the court without the intervention of a jury. In the findings of fact filed by the trial judge the reserve agreement is copied in full and it contains the following provision: "As of January 31st, July 31st, and October 31st, you (appellee) will pay to us (appellants) the amounts by which reserves set up under this and any other agreements, heretofore executed by us, exceed 3% of the total balances outstanding on all notes purchased from us, provided that no payments need be made by you so long as any indebtedness we may owe to you at the time of settlement above stated is unpaid, but such reserves may be held and applied by you against such indebtedness."

The court found that on July 31; 1938, the last settlement day prior to the trial under the terms of the reserve agreement, appellants were indebted to the appellee in the total sum of $2880, exclusive of interest and attorney's fees. He concluded as a matter of law, therefore, that appellants were not entitled to be paid the reserves before or at the time of the trial because of the stipulation in the reserve agreement to the effect that no payments were due as long as appellants were indebted to appellee. The reserve account amounted to $1996.06 and appellants were indebted to appellee at the time of the trial in the total sum of $2880. The court, therefore, rendered judgment against appellants and denied them the offset for which they contended.

Under the provisions of Articles 2015, 2016 and 2017, R.C.S:1925, and a long line of decisions of our courts, a defendant is permitted to offset certain claims against a demand of the plaintiff, but the rule is well established that unmatured obligations of the plaintiff in favor of the defendant cannot be set-off as a defense to a claim of the plaintiff in the absence of a showing of insolvency. Stockyards National Bank v. Presnall, 109 Tex. 32, 194 S.W. 384; Wilkens & Lange v. Christian, Tex.Civ.App., 223 S.W. 253.

In Stockyards National Bank v. Presnall, supra, Chief Justice Phillips, speaking for the Supreme Court, said [109 Tex. 32, 194 S.W. 385]: "It is a primary rule that a debt must have matured to be available as a set-off."

Appellants admit the rule of law to be such as we have announced but they contend that the debt due them under the reserve agreement matured July 31, 1938. We cannot agree with them in this contention. They were indebted to appellee in the total sum of $2880. Of that amount the sum of $877, exclusive of interest and attorney's fees, was due upon the notes sued on in this case. In addition, the findings of the trial court show that appellants were indebted to appellee upon a note executed by one George W. Taylor in the sum of $1116, exclusive of interest and attorney's fees, and that they were indebted to appellee upon another note executed by them in the sum of $800. It is shown they were indebted to appellee upon still another note executed by one Paul Nichols in the sum of $87. These items, together with the notes sued on, make up the total sum of $2880 which was owing to appellee by appellants on the 31st of July, 1938. The reserve account to which they were entitled as a credit upon the books of appellee amounted to $1996.-06. Under the reserve agreement, if appellants had not been indebted to appellee they would have been entitled to be paid all of this sum except 3% of the total balance on outstanding notes purchased by appellee from them, the exact amount to which they would have been entitled on July 31, 1938, being $1012.83. The provisions of the reserve agreement, however, to the effect that no payments need be made by appellee so long as any indebtedness may be owing to it by appellants at the time settlements otherwise would be due, but that such reserves may be held and applied against such indebtedness, precluded appellants' right to demand payment of the excess reserve or utilizing it as a set-off against the portion of the total indebtedness upon which the suit was filed. After deducting the amount due upon the notes herein sued upon, they still were indebted to appellee upon the other obligations in the sum of approximately $1800 and, under the reserve agreement, appellee was entitled to hold the excess reserve as security for that indebtedness. The excess reserve was, therefore, as found by the trial court, not due at the time the suit was tried and was not available to appellants as an offset.

The trial court concluded as a matter of law that, since appellants were indebted to appellee on July 31, 1938, none of the reserves were due or payable to them and, appellee not being shown to be insolvent, appellants could not off-set their contingent

unmatured claim to the reserve fund as against appellee's matured demand. This conclusion is in accord with the law as announced in the cases above cited and many others. The trial court's action in rendering judgment against appellants was not subject to the criticism made by them and we find no error revealed by the record. Appellants' assignments of error are, therefore, overruled and the judgment of the court below will be affirmed.